IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GWENDOLYN PETERS,

           Plaintiff,

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

           Defendant.

CIVIL ACTION FILE NO.

1:09-CV-3227-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her application for Supplemental Security Income.  For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

## I.    Procedural History

Plaintiff Gwendolyn Peters filed an application for Supplemental Security Income on February 13, 2007.  [Record ("R.") at 108-14].  Plaintiff alleged that she

became disabled on October 24, 2006, due to lupus, affective and mood disorders, osteoarthritis, and chronic obstructive pulmonary disease. [R. at 61-62, 108-15, 120, 182]. After her application was denied initially and on reconsideration, an administrative hearing was held on April 8, 2009. [R. at 23-60, 63-66, 70-72]. The Administrative Law Judge ("ALJ") issued a decision on May 20, 2009, denying the claimant's application, and the Appeals Council denied Plaintiff's request for review on September 15, 2009. [R. at 1-3]. Plaintiff filed a complaint in this court on November 4, 2009, seeking judicial review of the final decision. [Doc. 2]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Statement of Facts

The ALJ found that claimant Gwendolyn Peters has lupus (currently inactive), chronic pulmonary disease, bipolar disorder, and depression. [R. at 16]. Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 18]. The ALJ found that Plaintiff has the residual functional capacity to perform sedentary work with the following limitations: she requires a sit/stand option for two minutes every hour; must avoid all

2

environmental irritants; is limited to occasional contact with the general public only; is limited to low stress and one-two step jobs only (due to depression); is precluded from performing overhead reaching and from working at heights; is unable to climb scaffolding, ropes, ladders, and stairs; and is unable to perform crouching, kneeling, or crawling.  [R. at 19].  The ALJ found that Plaintiff could not perform her past relevant work but that there are a significant number of jobs in the national economy that she is able to perform, such as final assembler, document preparer, and patcher. [R. at 21-22].  Accordingly, the ALJ concluded that Plaintiff has not been under a disability since February 13, 2007, the date she filed her application for Supplemental Security Income.  [Id.].

The ALJ's decision [R. at 14-22] states the relevant facts of this case as modified herein as follows:

The record reveals that the claimant was diagnosed with systemic lupus erythematosus in 2007.  (Exhibit 12F).  On July 31, 2007, an orthopedic impairment questionnaire was completed by S. Lim, M.D.[1]  Dr. Lim reported that the claimant is diagnosed with lupus and has arthritis in her hands and knees.  The claimant also has

---

[1]The court notes that throughout his decision, the ALJ misnamed this treating physician as "Dr. Lin."  [R. at 16-21].

synovial thickening of the PIP and MCP joints and knees. Dr. Lim reported that the claimant has full range of motion and has limited fine and gross coordination of all extremities. Dr. Lim reported that the claimant has a limited ability to perform pushing, pulling, grasping, and fingering and has painful knees when walking three blocks or up and down stairs. (Exhibit 11F). Dr. Lim also completed a pain questionnaire on July 31, 2007. Dr. Lim reported that the claimant's onset of lupus and degenerative joint disease was in 2006. Dr. Lim reported that the claimant has pain located in her hands, wrists, knees, and back. Dr. Lim opined that the claimant has been physically capable of performing a full eight-hour workday since the onset date. (Exhibit 13F). Dr. Lim completed a Fatigue Questionnaire on July 31, 2007. Dr. Lim opined that the claimant would be unable to perform a full eight hour workday given her recurrent or chronic fatigue. (Exhibit 14F).

Outpatient records from Grady Hospital reveal that the claimant was seen on July 31, 2007. It was reported that the claimant had lupus with increasing joint pains and a history of swelling. The claimant was taking 20 mg prednisone. Examination was remarkable for some limitation and pain but without obvious synovitis. When seen on October 30, 2007, the claimant's mood was reported to be stable. The claimant had no outward signs of lupus activity. The claimant was seen for a

4

consultation on December 4, 2007.  It was reported that there was no evidence of active systemic lupus erythematosus.  The claimant's chest was clear to ascultation bilaterally, and her blood pressure was 158/110.  The claimant's dosage of enalapril was increased.  When seen on April 29, 2008, the claimant complained of occasional aches and pains in some of her fingers and elbows without significant swelling.  The claimant also complained of occasional lower back pain.  The claimant reported that her primary care physician was addressing her hypertension.   The claimant's medications included Plaquenil and 5 mg of prednisone daily.  On examination, the claimant's blood pressure was 146/98.  The claimant was reported to be in no apparent distress.  The claimant's chest was clear to auscultation bilaterally.  The claimant had full range of motion throughout without active synovitis, edema, or deformities.  It was reported that there was no active evidence of lupus disease.  (Exhibit 12F).

On November 18, 2008, Dr. Lim completed a Lupus Questionnaire.  Dr. Lim reported that the claimant has erosive arthritis involving the joints of her hands, wrists, knees, and feet.  The claimant experiences fatigue, weight loss, malaise, lymph node enlargement, dyspnea on exertion, and hair loss.  Dr. Lim assessed the claimant as capable of sitting for thirty minutes and standing for five minutes.  In an eight hour working day, Dr. Lim reported that the claimant was capable of sitting, standing, and

5

walking less than two hours.  Dr. Lim reported that the claimant would need to sometimes take an unscheduled break during an eight-hour day every two hours for thirty minutes.  Dr. Lim reported that the claimant needs a job which permits shifting positions from sitting, standing, or walking.  Dr. Lim reported that the claimant was precluded from lifting and carrying any weight and unable to perform twisting, stooping, crouching, climbing ladders, and stairs.  Dr. Lim reported that the claimant is capable of low stress jobs.  (Exhibit 20F).

With regard to the claimant's mental impairments, the claimant was seen for treatment of bipolar disorder and depression at Rockdale Mental Health Clinic.  In October 2006, it was reported that the claimant was stable on medication and that her global assessment of functioning was 58.  In November 2006, it was reported that the claimant was experiencing mild depression.  The claimant's global assessment of functioning was 58.  (Exhibit 2F).

Treatment records from GRN Community Service Board reveal that the claimant was seen in July 2007 for treatment of bipolar disorder.  The claimant's global assessment of functioning score at this time was reported to be 55.  (Exhibit 21F).  On August 9, 2007, a mental impairment questionnaire was completed by a treating physician from GRN Community Service Board.  It was reported that the claimant is

AO 72A
(Rev.8/82)

diagnosed with bipolar disorder and was experiencing intermittent auditory hallucinations, non-command type. The claimant's affect and mood were reported to be depressed with lability. The claimant's recent and remote memory was reported to be normal. The claimant's insight/judgment/impulse control were normal. With regard to the claimant's ability to get along with the public, supervisors, and coworkers, it was reported that the claimant was unable to cope with stressors at that time. (Exhibit 15F). When seen in August 2008, no psychosis was present. The claimant's global assessment of functioning score was 60. When seen on November 4, 2008, the claimant's mood was pleasant and stable. The claimant reported that her lupus had flared up recently resulting in a lot of pain and mood swings. The claimant reported that her prednisone was increased to 10 mg and that this helped control her symptoms. No suicidal/homicidal ideation or psychosis was noted. The claimant was reported to be responding fairly well to medications, and her global assessment of functioning score was 60. When seen on January 27, 2009, the claimant was reported to be neatly dressed and alert. She was oriented times four. The claimant complained of feeling depressed due to her finances. The claimant reported that she was sleeping well and denied suicidal/homicidal ideation and hallucinations. The claimant admitted

to slight paranoid thinking.  The claimant's global assessment of functioning score was 55.  (Exhibit 21F).

With regard to the claimant's chronic obstructive pulmonary disease, the record shows that the claimant underwent pulmonary function studies on July 23, 2007, for a diagnosis of shortness of breath and asthma.  Testing revealed moderate obstructive lung defect and mild restrictive lung defect.  There was mild decrease in defusing capacity.  Poor test performance was indicated, and it was reported that testing was interpreted as a mild response to bronchodilators.  An FEV1 reading of 2.10 was reported.  (Exhibit 10F).

The claimant has reported that she is able to prepare meals daily and is able to care for her personal needs.  The claimant also reported that she is able to go grocery shopping once a month for about forty-five minutes.  (Exhibit 8E).

The claimant testified that her chronic obstructive pulmonary disease is under control, except for hot summer days outside, and that her depression is helped somewhat by medications.  The claimant sees her daughter every day and kept up with a long-term neighbor until the neighbor died recently.  The claimant does not take pain medications.  She testified that she cannot take pain medications due to chronic kidney disease, but she did not allege kidney problems in her application.  The ALJ did not

8

notice any mention of kidney issues in the medical records. The claimant agreed that her lupus is currently inactive, and this is consistent with medical records. (R. at 26; and Exhibit 20F). Specifically, when examined in December 2007 and in April 2008, there was no evidence of active lupus disease. (Exhibit 12F). The claimant complained of an inability to sit for more than thirty minutes at a time, but she then testified that she merely needed to stand for three seconds to ease her back. When questioned by her representative, she revised her answer to needing to stand for ten minutes, raising an issue as to credibility. The claimant's depression also appears to be mild, with psychiatric treatment mainly in 2006 and in early 2007. (Exhibits 2F and 21F).

The claimant has past relevant work as a housekeeper/cleaner, handpackager, and gluer. According to vocational expert testimony, the claimant's past relevant work is classified as follows: housekeeper/cleaner (light/unskilled), handpackager (medium/unskilled), and gluer (light/unskilled).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

The scope of judicial review of the Commissioner's decision is limited.  The court's function is to determine: (1) whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner; and (2) whether the Commissioner applied proper legal standards.  See Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984).  Substantial evidence is more than a scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind

10

might accept as adequate to support a conclusion.  See <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating that she is unable to perform her former type of work.  If the claimant satisfies her burden of proving disability with respect to her former type of work, the burden shifts to the Commissioner to demonstrate that the claimant, given her age, education, work experience, and impairment, has the capacity to perform other types of jobs which exist in the national economy.  See <u>Boyd v. Heckler</u>, 704 F.2d 1207, 1209 (11th Cir. 1983).

Under the regulations as promulgated by the Commissioner, a five step sequential procedure must be followed when evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).  In the sequential evaluation, the Commissioner must consider in order: (1) whether the claimant is gainfully employed, 20 C.F.R. §§ 404.1520(b) and 416.920(b); (2) whether the claimant has a severe impairment which significantly limits her ability to perform basic work-related functions, 20 C.F.R. §§ 404.1520(c) and 416.920(c); (3) whether the claimant's impairments meet the Listing of Impairments, 20 C.F.R. §§ 404.1520(d) and 416.920(d); (4) whether the claimant can perform her past relevant work, 20 C.F.R. §§ 404.1520(e) and 416.920(e); and (5)

11

whether the claimant is disabled in light of age, education, and residual functional capacity, 20 C.F.R. §§ 404.1520(f) and 416.920(f). If, at any step in the sequence, the claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a) and 416.920(a).

## IV.    Findings of the ALJ

The ALJ made the following findings of fact:

1.    The claimant has not engaged in substantial gainful activity since February 13, 2007, the application date (20 C.F.R. 416.920(b) and 416.971 *et seq*.).

2.    The claimant has the following severe impairments:  lupus (currently inactive), chronic obstructive pulmonary disease, bipolar disorder, and depression (20 C.F.R. 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

4.    The claimant has the residual functional capacity to perform sedentary work except the claimant requires a sit/stand option for two minutes in place every hour.  The claimant should avoid all environmental irritants.  The claimant is limited to occasional contact with the general public only.  The claimant is limited to low stress and one-two step jobs only (due to depression).  The claimant is precluded from performing overhead reaching.  The claimant is precluded from working at heights and is unable to climb scaffolding, ropes, ladders, and stairs.  The claimant is unable to perform crouching, kneeling, or crawling.

5.    The claimant is unable to perform any past relevant work (20 C.F.R. 416.965).

AO 72A

(Rev.8/82)

6.      The claimant was born on August 17, 1962, and was 44 years old, which is defined as a younger individual age 18-44, on the date the application was filed. The claimant attained age 45 on August 17, 2007, and is currently 46 years old, which is defined as a younger individual age 45-49 (20 C.F.R. 416.963).

7.      The claimant has a limited education and is able to communicate in English (20 C.F.R. 416.964).

8.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 416.960(c) and 416.966).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since February 13, 2007, the date the application was filed (20 C.F.R. 416.920(g)).

[R. at 14-22].

## V.      Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff Gwendolyn Peters has not engaged in substantial gainful activity since February 13, 2007, the date she applied for Supplemental Security Income. [R. at 16]. At the second step, the ALJ determined that the claimant has lupus (currently inactive), chronic obstructive pulmonary disease, bipolar disorder, and depression. [R. at 16]. Although these impairments are "severe" within the meaning of the Social Security

13

Regulations, the ALJ found at the third step that they did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 18]. The ALJ found at the fourth step of the sequential evaluation that the claimant was unable to perform her past relevant work as a housekeeper/cleaner, handpackager, and gluer. [R. at 21]. At the fifth step, the ALJ concluded that the claimant is able to perform other jobs that exist in significant numbers in the national economy, such as final assembler, document preparer, and patcher. [R. at 21-22]. Therefore, the claimant has not been under a disability from February 13, 2007, the date the application was filed. [R. at 22].

Plaintiff Peters argues that the ALJ erred when he ignored and discounted some limitations imposed by her treating rheumatologist, Dr. Lim. [Doc. 11 at 12-16]. Plaintiff also contends that the ALJ did not properly assess her credibility. [Doc. 11 at 19-22]. In addition, Plaintiff argues the ALJ, in assessing her mental residual functional capacity ("RFC"), failed to evaluate the limitations imposed by experts and did not determine what causes her stress. [Doc. 11 at 16-19].

In a November 2008 RFC questionnaire, Dr. Lim opined that Plaintiff: could sit, stand, or walk less than two hours in an eight-hour day; could never lift, carry, twist, stoop, crouch, or climb ladders or stairs; could grasp, turn, and twist objects only 20%

14

of an eight-hour day; and could reach, including overhead, for only 5% of an eight-hour day.  [R. at 472-78].  Dr. Lim found that Plaintiff was capable of working at a low stress job but that she would have to be permitted to shift positions at will from sitting, standing, or walking, and be permitted to take a thirty minute break every two hours.  [Id.].  Dr. Lim also opined that Plaintiff would be absent from work more than four days per month.  [Id.].  At the administrative hearing, the vocational expert ("VE") testified that a person with these limitations would not be able to perform any competitive work.  [R. at 58-59].

Absent a showing of good cause to the contrary, opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner.[2]  See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  The Eleventh Circuit has found good cause when a treating physician's report is not accompanied by objective medical evidence or is wholly conclusory.  See Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  Lewis, 125 F.3d at 1440.  An ALJ's failure "to provide the reviewing court with sufficient

_____

[2]In weighing the opinion of a physician, the ALJ must also consider whether the physician is a specialist.  20 C.F.R. § 416.927(d).  Dr. Lim is a specialist whose area of expertise is rheumatology.

15

reasoning for determining that the proper legal analysis has been conducted mandates reversal." Keeton v. Dep't of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994). "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000). The court finds that in the present case, the ALJ failed to adequately explain his evaluation of Dr. Lim's opinion.

In formulating his RFC assessment, the ALJ found that Plaintiff could "perform sedentary work except the claimant requires a sit/stand option for 2 minutes in place every hour." [R. at 19]. She is limited to occasional contact with the public and low stress and one or two step jobs. [Id.]. The ALJ also found that Plaintiff is precluded from: performing overhead reaching; working at heights; climbing scaffolding, ropes, ladders and stairs; and crouching, kneeling, and crawling. [R. at 19].

As the Commissioner correctly notes, "an examination of the ALJ's decision shows that the ALJ agreed with some of Dr. Lim's findings." [Doc. 12 at 5]. Dr. Lim found that Plaintiff was "capable of low stress jobs," and the ALJ included this restriction into his RFC assessment, as noted *supra*. [R. at 19, 474]. However, it is clear from the RFC that the ALJ also rejected many aspects of Dr. Lim's opinion. And the only explanation the ALJ offered for rejecting this treating rheumatologist's

16

opinion was that "Dr. Lin's [sic] questionnaires seem overstated compared to his various examinations of the claimant." [R. at 21].

The ALJ did not explain why, for example, he rejected Dr. Lim's finding that Plaintiff could grasp, turn, and twist objects only 20% of an eight-hour day and could reach for only 5% of an eight-hour day. [R. at 472-78]. These limitations found by Dr. Lim are significant because, as Plaintiff's attorney points out, "All of the unskilled sedentary jobs which the ALJ found Peters could perform require frequent reaching, handling, and fingering." [Doc. 11 at 14]. "Frequent" is defined by Social Security Ruling ("SSR") 83-10 as occurring from one-third to two-thirds of the time. The Ruling also provides, "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 83-10. If the manipulative limitations as expressed by Dr. Lim were credited, all of the jobs identified by the ALJ would be eliminated. The evidence also reveals that Dr. Lim's opinion on these issues is supported by findings that Plaintiff had synovial thickening, swelling, and tenderness in her hands and that she complained of pain and swelling in her hands, wrists, and fingers. [R. at 385, 394-98, 419, 422, 472-74].

The ALJ might have had legitimate reasons for discrediting Dr. Lim's opinions regarding Plaintiff's limited ability to reach and manipulate. However, the ALJ did not

17

specifically state what those reasons were, and the court cannot "affirm simply because some rationale might have supported the ALJ's conclusion." Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984). From the ALJ's statement that Dr. Lim's opinions "seem overstated compared to his various examinations of the claimant," it appears that the ALJ "rejected the opinions of the treating physician not even on the basis of a differing opinion expressed by another doctor, but rather because [the] ALJ himself reached a different conclusion after viewing the medical records." Hillsman v. Bowen, 804 F.2d 1179, 1182 (11th Cir. 1986). This was erroneous. "An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians. . . ." Marbury v. Sullivan, 957 F.2d 837, 840 (11th Cir. 1992) (per curiam) (Johnson, J., concurring).

The Commissioner also argues that the ALJ rejected the opinion of Dr. Lim based on a finding that Plaintiff's testimony was not entirely credible. Dr. Lim found that any job Plaintiff could perform would have to allow her to shift positions at will from sitting, standing, or walking and to take a thirty minute break every two hours. [R. at 472-78]. The ALJ apparently rejected this finding because in his RFC assessment he found that Plaintiff only requires a sit/stand option for two minutes every hour. [R. at 19-20]. Although unclear, it appears that the ALJ's decision to

18

reject Dr. Lim's finding on this issue was based on statements made by Plaintiff at the hearing which the ALJ believed cast doubt on her credibility.  The ALJ wrote:

> The claimant complained of an inability to sit for more than 30 minutes at a time, but then testified that she merely needed to stand for three seconds to ease her back.  When questioned by her representative, she revised her answer to needing to stand for 10 minutes, raising an issue as to credibility.

[R. at 20].

Social Security Ruling 96-2p provides that "a treating source's medical opinion on what an individual can still do despite his or her impairment(s) will not be entitled to controlling weight if substantial, nonmedical evidence shows that the individual's actual activities are greater than those provided in the treating source's opinion."  The Commissioner contends that this Ruling permits the ALJ to discount the opinion of a treating physician if he finds the claimant not credible.  [Doc. 12 at 8].  The undersigned, however, finds that this is not a correct understanding of Ruling 96-2p.  As Plaintiff's attorney states, "The Ruling does not permit an ALJ to ignore a treating rheumatologist's opinion because he disbelieves the testimony the claimant gave at the hearing."  [Doc. 13 at 2].  Pursuant to the language quoted *supra* from SSR 96-2p, an ALJ is permitted to discredit a treating physician's opinion if substantial evidence reveals that the claimant's abilities are greater than those found by the physician.  But

the court finds that Plaintiff's testimony at the administrative hearing on her need to

alternate between sitting and standing does not constitute substantial evidence on this

issue.  Plaintiff was asked and testified to the following:

> Q.    Okay.  Do you ever have to move around after you've sat, let's say
> you've sat 30 minutes to an hour.
> A.    Yes, I have –
> Q.    What would you have to do under that circumstance?
> A.    I'd have to move around a little bit.
> Q.    What does a little bit mean in terms of minutes, seconds, hours?
> A.    I say about a second.
> Q.    One second?
> A.    About three seconds.
> Q.    Three seconds, okay.  One, two, three, that's three seconds.
> A.    No, not that.
> Q.    What do you mean?
> A.    I say about ten minutes.

[R. at 44-45].  The court finds that Plaintiff's bewildering testimony may establish that

she was confused, but it does not constitute "substantial, nonmedical evidence" that

her activities are greater than those found by Dr. Lim.  She first stated that after sitting

for thirty minutes to an hour, she needed to "move around a little bit" for one second,

then she stated three seconds.  [R. at 44-45].  When three seconds was described to her,

she testified that she needed ten minutes.  [R. at 45].  It does not appear that Plaintiff

had even a remotely accurate perception of how much time she was describing.

Moreover, there were other statements made by Plaintiff at the hearing that support her

allegation and Dr. Lim's finding that she frequently needs to shift between sitting and standing. Plaintiff, for example, asked the ALJ without prompting whether she could "stand up for a few minutes" during the hearing. [R. at 37]. The ALJ did not mention this testimony. For these reasons, the court finds that the ALJ did not adequately explain his reasons for rejecting Dr. Lim's opinion.

Plaintiff argues that the ALJ's failure to properly refute a treating physician's opinion means that it was accepted as true. [Doc. 11 at 16]. In support thereof, Plaintiff cites to <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986), in which the Eleventh Circuit stated, "Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." The court finds Plaintiff's argument to be unpersuasive for a number of reasons.

First, it does not appear that the "accepted as true" doctrine as held by the <u>MacGregor</u> court is binding authority. The Eleventh Circuit has held, "The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision." <u>Cargill v. Turpin</u>, 120 F.3d 1366, 1386 (11th Cir. 1997) (citing <u>United States v. Woodard</u>, 938 F.2d 1255, 1258 (11th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1109, 112 S. Ct. 1210, 117 L. Ed. 2d 449 (1992)). With

21

regard to the issue of whether an ALJ has accepted a treating physician's opinion as true because it was ignored or improperly refuted, the court notes that Eleventh Circuit opinions issued before MacGregor, such as Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985), and Wiggins v. Schweiker, 679 F.2d 1387, 1390 (11th Cir. 1982), remanded the respective cases to the Social Security Administration for further administrative proceedings despite finding that the treating physicians' opinions had not been properly refuted.  Moreover, the court in MacGregor, upon which Plaintiff relies, offered no explanation for the "accepted as true" doctrine and cited to no authority in support of its holding.  786 F.2d at 1053.

While the Eleventh Circuit recently reaffirmed the MacGregor statement in Newton v. Astrue, 297 Fed. Appx. 880, 884 (11th Cir. 2008), as an unpublished opinion, the decision does not constitute binding legal authority, and it does not appear that the court's holding supports the argument Plaintiff is asserting in the present case. In Newton, the plaintiff testified that her job as a census clerk involved writing, typing, and handling small objects for up to seven hours a day but that she had difficulty writing due to pain in her right hand and arm.  Id. at 884.  These claims were confirmed by a consultative physician, who found that the plaintiff could only occasionally use her right hand for reaching, handling, fingering, and feeling.  Id. at

22

881.  The court stated that because the ALJ did not specifically discredit the statements from the plaintiff and the physician, he accepted them as true as a matter of law.  <u>Id.</u> at 884.  But despite the fact that a person without the ability to frequently write, type, and handle small objects could not perform the plaintiff's job as a census clerk, the court did not remand for benefits.  Instead, it remanded the case to the ALJ for him to develop the record more fully and fairly.  <u>Id.</u> at 885.  Thus, although the <u>Newton</u> court stated that it applied the "accepted as true" doctrine, the case does not support Plaintiff's argument.

For all these reasons, the undersigned finds that the ALJ failed to properly evaluate Dr. Lim's opinion as a treating physician and that substantial evidence does not support the ALJ's decision.  However, this does not mean that the ALJ accepted the opinion as true and that Plaintiff is automatically entitled to payment of benefits as she argues.  The undersigned, therefore, **ORDERS** that the ALJ's decision be **REVERSED** and that the case be **REMANDED** for further proceedings in accordance with the prior discussion.  Because remand is warranted on this basis alone, Plaintiff's remaining arguments will only be addressed briefly.

Plaintiff contends that the ALJ erred in evaluating Plaintiff's credibility.  The ALJ wrote in his decision that he found that Plaintiff's "statements concerning the

AO 72A

(Rev.8/82)

intensity, persistence and limiting effects of [her] symptoms are not entirely credible." [R. at 20; Doc. 11 at 19-22]. As discussed *supra*, although the ALJ found that Plaintiff's statements regarding her need to alternate between sitting and standing "rais[ed] an issue as to credibility," it appears that this testimony revealed confusion rather than a lack of credibility. Plaintiff also asked for permission to stand up during the hearing without any prompting, which gives credibility to her sit/stand assertion, but this was not mentioned by the ALJ. [R. at 37].

The ALJ's other reason for finding Plaintiff's testimony to be not entirely credible is even more problematic and not supported by substantial evidence. The ALJ explained in his decision that Plaintiff's "claims of severe fatigue do not seem supported by the record or *by her appearance at the hearing*." [R. at 21 (emphasis added)]. The Eleventh Circuit has condemned this type of "sit and squirm" jurisprudence:

> In this approach, an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied. . . . [T]his approach "will not only result in unreliable conclusions when observing claimants with honest intentions, but may encourage claimants to manufacture convincing observable manifestations of pain, or, worse yet, discourage them from exercising the right to appear before an Administrative Law Judge for fear that they may not appear to the unexpert eye to be as bad as they feel."

24

Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982) (quoting Tyler v. Weinberger, 409 F. Supp. 776, 789 (E.D. Va. 1976)).  The Commissioner argues that "the ALJ did not rely on Plaintiff's presentation exclusively in evaluating credibility." [Doc. 12 at 17].  This is true, but as Plaintiff's attorney notes, "[A]n improper sit-and-squirm credibility rejection is still improper when additional reasons are given." [Doc. 13 at 4].  An ALJ is not medically qualified to observe a claimant at a hearing and then determine whether her appearance meets the "index of traits" that the ALJ expects to be manifested for a person claiming fatigue.

The Commissioner correctly argues that an ALJ is allowed "to consider his observations of the claimant in assessing the credibility of the claimant's allegations." [Doc. 12 at 16].  Social Security Ruling 96-7p provides, "In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements."  The Eleventh Circuit has also held, "The ALJ is not prohibited 'from considering the claimant's appearance and demeanor during the hearing.'" Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987) (quoting Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985)).

AO 72A
(Rev.8/82)

The problem in the present case is that the ALJ's statement about Plaintiff's appearance not supporting her claims of fatigue is so vague that no reviewing court could determine whether this decision was supported by substantial evidence. From the ALJ's decision, it is not possible to determine what it was about Plaintiff's appearance that allegedly did not support her claims of fatigue. In contrast to the present case, the ALJ in <u>Norris</u> explained that despite the claimant's allegations of disabling pain in his back and leg when walking, standing, or sitting, the claimant "displayed no significant problem ambulating around the hearing room or sitting throughout the hearing." 760 F.2d at 1158. This was a specific observation made by the ALJ that allowed a reviewing court to evaluate the reasoning behind the ALJ's credibility assessment and determine if the proper legal analysis was conducted. In the present case, the ALJ gave no specific facts about Plaintiff's appearance which allegedly undermined her allegations but only stated that her "claims of severe fatigue do not seem supported by . . . her appearance at the hearing." [R. at 21]. The court finds that the ALJ's credibility assessment was the result of a failure to apply the proper legal standards and was not supported by substantial evidence.

Finally, Plaintiff argues that the ALJ's mental RFC assessment was not based on a reasoned and accurate evaluation of all of the evidence in the record. Specifically,

AO 72A

(Rev.8/82)

Plaintiff contends that the ALJ failed to evaluate the limitations imposed by experts and did not determine what causes her stress.[3]  [Doc. 11 at 16-19].  A physician completed a mental impairment questionnaire in August 2007 and found that Plaintiff had an abnormal ability to:  understand, remember, and carry out simple instructions; get along with the public, supervisors, and co-workers; deal with changes in the work setting; and make simple work-related decisions.  [R. at 440-42].  Although the parties disagree over whether the physician was a state agency physician, Plaintiff is correct in noting that the ALJ failed to mention the questionnaire in his decision.  The ALJ also made no mention of two agency physicians who found that Plaintiff had a reduced ability to work in close coordination with others and interact with large groups and co-workers.  [R. at 350, 468].  Because an ALJ has a "basic obligation to develop a full

_____

[3]Plaintiff also argues that "even if the ALJ's restriction to one-to-two step jobs were correct, it would eliminate the patcher position . . . [and] the document preparer" position because both jobs allegedly require multiple steps.  [Doc. 11 at 17-18].  This argument is unpersuasive.  At the administrative hearing, the VE testified that a hypothetical person limited to one-to-two step jobs could perform the patcher and document preparer positions.  [R. at 21-22, 55-56].  There is no evidence that the ALJ erred in relying on the expert's testimony.  Moore v. Astrue, 256 Fed. Appx. 330, 332 (11th Cir. 2007) ("When a disability claimant has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a VE.").

AO 72A

(Rev.8/82)

and fair record," upon remand the ALJ should evaluate the findings made by these physicians.  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

The ALJ found that Plaintiff was limited to low stress jobs, but Plaintiff argues that the ALJ was required to determine what job characteristics are likely to cause her stress.  [Doc. 11 at 18-19].  Plaintiff bases this argument on Lancellotta v. Sec'y of Health & Human Servs., 806 F.2d 284, 285 (1st Cir. 1986).  In that case, the ALJ found that the claimant was capable of performing low stress jobs, but the First Circuit Court of Appeals held that the ALJ erred because he "made no findings on the nature of [the claimant's] stress, the circumstances that trigger it, or how those factors affect his ability to work."  Id.  Lancellotta is not binding authority, and the facts are distinguishable from the present case because "[t]hree doctors concluded that Lancellotta was totally incapacitated as a result of anxiety." Id. at 285.  In contrast, the evidence in the present case shows, as the Commissioner argues, that "no treating physician has opined that Plaintiff's stress renders her disabled."  [Doc. 12 at 15].  Given the lack of binding caselaw on the issue and the fact that the ALJ considered Plaintiff's stress and limited her to low stress and one-to-two step jobs in his RFC, the undersigned finds that the ALJ did not err in not evaluating what job characteristics are likely to cause Plaintiff stress.

28

## VI.    Conclusion

For the foregoing reasons and cited authority, the court finds that the decision of the ALJ was not supported by substantial evidence and was the result of a failure to apply the proper legal standards.    It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** pursuant to 12 U.S.C. § 405(g) Sentence Four for further proceedings in accordance with the above discussion.  The Clerk is **DIRECTED** to enter judgment in favor of the Plaintiff.

**IT IS FURTHER ORDERED** that, in the event past due benefits are awarded to Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees.  Defendant's response, if any, shall be filed no later than thirty days after Plaintiff's attorney serves the motion on Defendant.  Plaintiff shall file any reply within ten days of service of Defendant's response.

AO 72A

(Rev.8/82)

**SO ORDERED**, this 23rd day of September, 2010.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A

(Rev.8/82)